UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                   :

NATURAL RESOURCES DEFENSE     :
COUNCIL, INC.,                         :     07 Civ. 5929 (WHP)
                                   :

           Plaintiff,           :     ECF Case
                                   :

      - v. -                  :
                                   :

UNITED STATES DEPARTMENT     :
OF STATE,                          :
                                   :

           Defendant.       :
-----------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Thomas Cmar (TC 8791)
NATURAL RESOURCES DEFENSE COUNCIL
1200 New York Ave., N.W., Ste. 400
Washington, DC  20005
Phone:  (202) 289-2405
Fax:  (202) 289-1060

Mitchell S. Bernard (MB 5823)
NATURAL RESOURCES DEFENSE COUNCIL
40 West 20th Street
New York, NY  10011
Phone:  (212) 727-2700
Fax:  (212) 727-1773

Counsel for Plaintiff

## INTRODUCTORY STATEMENT

This case concerns requests filed by Plaintiff Natural Resources Defense Council

("NRDC") under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), for records

from Defendant United States Department of State ("DOS") relating to the logging and trade of

Peruvian bigleaf mahogany.  As demonstrated below and in the accompanying Declaration of

Ari Hershowitz, dated February 7, 2008 ("Hershowitz Decl."), NRDC seeks information from

DOS in order to educate the public on illegal logging and trade of Peruvian mahogany and to

inform NRDC's participation in ongoing national and international debates over how to save

Peru's endangered Amazonian rainforest and the indigenous people who make their homes there.

NRDC first requested this information on July 11, 2006, and now, over a year and a half

later and only after filing this lawsuit, has finally received some responsive documents from

DOS.  The agency continues to withhold dozens of documents, however, based on an apparently

overbroad invocation of Exemption 5 of FOIA, claiming that the documents are protected by the

deliberative process privilege.  NRDC now respectfully moves the Court to grant it summary

judgment with respect to one particularly important document, which DOS released only in

redacted form:  an April 6, 2006 cable from the United States Embassy in Peru, which

summarizes facts known to the Embassy regarding illegal logging and trade of Peruvian

mahogany.  DOS' proffered justifications for withholding portions of the document are deficient

on their face, and the portions that have been released suggest that the withheld material is

factual in nature.  At a minimum, the Court should review the document *in camera* to determine

whether DOS is faithfully complying with its obligations under FOIA.

## STANDARD OF REVIEW

FOIA provides for *de novo* review of agency decisions to withhold responsive documents

in full or in part.  5 U.S.C. § 552(a)(4)(B).  Most FOIA cases are resolved on cross-motions for

summary judgment.  N.Y. Times Co. v. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y.

2007); accord Miscaviage v. IRS, 2 F.3d 366, 369 (11th Cir. 1993).

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted

when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

judgment as a matter of law."  In the FOIA context, because the burden of proof is always on the

government, as discussed below, it is the government's burden on summary judgment to

"demonstrate that each document that falls within the class requested either has been produced,

is unidentifiable, or is wholly exempt from the Act's inspection requirements."  Ruotolo v. Dep't

of Justice, Tax Div., 53 F.3d 4, 9 (2d Cir. 1995).

## LEGAL BACKGROUND

**A.    The Freedom of Information Act**

FOIA was designed to protect citizens' "right to be informed about what their

Government is up to."  U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489

U.S. 749, 773 (1989) (internal quotations omitted).  "The basic purpose of FOIA is to ensure an

informed citizenry, vital to the functioning of a democratic society, needed to check against

corruption and to hold the governors accountable to the governed."  Nat'l Labor Relations Bd. v.

Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  The statute was intended "to permit

access to official information long shielded unnecessarily from public view and . . . to create a

judicially enforceable public right to secure such information from possibly unwilling official

hands."  EPA v. Mink, 410 U.S. 73, 80 (1973); see also Grand Cent. P'ship, Inc. v. Cuomo, 166

F.3d 473, 478 (2d Cir. 1999) ("FOIA was enacted to promote honest and open government and

to assure the existence of an informed citizenry.").

FOIA requires that, "upon any [duly submitted] request for records," agencies of the federal government must "make the records promptly available." 5 U.S.C. § 552(a)(3). In enacting FOIA, Congress recognized the importance not only of access to information, but of *timely* access to that information. H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6267, 6271 (report on the 1974 FOIA amendments) ("[I]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial."), cited in Edmonds v. FBI, 417 F.3d 1319, 1324 (D.C. Cir. 2005)). To ensure timely processing, Congress established an initial time period of 20 business days for an agency to issue a decision on a FOIA request. 5 U.S.C. § 552(a)(6)(A)(i). An agency can extend this deadline by ten additional days, if (and only if) the agency provides written notice setting out the basis for the "unusual circumstances" necessitating such delay. 5 U.S.C. § 552(a)(6)(B). Congress carefully set these time limits in the 1996 amendments to FOIA, balancing the Executive Branch's ability to process requests with the public's need for timely disclosure of agency records. See, e.g., Gilmore v. Dep't of Energy, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998) ("When Congress [] extended the time limit for responding to FOIA requests, it continued to express concern that agencies were dragging their feet in responding to FOIA requests[:] '[M]any agencies have failed to process FOIA requests within the deadlines required by law. These delays in responding to FOIA requests continue as one of the most significant FOIA problems.'") (quoting H. Rep. No. 104-795, at 13 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3456).

As the Supreme Court has recognized, FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (internal citations and quotations

omitted); see also U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989). Specifically, once a responsive record is identified, FOIA requires an agency to provide it to the requestor unless it is exempt from disclosure under one of the Act's nine narrow exemptions. 5 U.S.C. § 552(b); Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973). These exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). Thus, it is well settled that FOIA exemptions are to be construed narrowly. See, e.g., Grand Cent. P'ship, 166 F.3d at 478 ("[T]he Act is to be construed broadly to provide information to the public in accordance with its purposes; for the same reason, the exemptions from production are to be construed narrowly.") (internal citations and quotations omitted).

"Consistently with [the Act's] purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of *any* requested documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991) (citing 5 U.S.C. § 552(a)(4)(B)) (emphasis added). In particular, the agency defendant is required to submit declarations that identify the documents at issue and "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977) (citations omitted); see also Halpern v. FBI, 181 F.3d 279, 290-91, 294 (2d Cir. 1999); King v. U.S. Dep't of Justice, 830 F.2d 210, 217-19 (D.C. Cir. 1987).

The burden is on the government to provide enough detail about the nature of the withheld documents that the FOIA requester can challenge, and the district court can review, the agency's claims that the documents are exempt from disclosure under FOIA. Halpern, 181 F.3d

at 290-91, 294; Ḵing, 830 F.2d at 218.  Declarations that are conclusory and not specific cannot

support an agency's decision to withhold the requested records.  Halpern, 181 F.3d at 290-91;

see also Public Citizen Health Research Group v. FDA, 185 F.3d 898, 906 (D.C. Cir. 1999).

Declarations that merely parrot the statutory language of FOIA or the relevant case law are also

insufficient to support an agency's decision to withhold requested documents.  Halpern, 181 F.3d

at 294; see also Coleman v. FBI, 972 F. Supp. 5, 9 (D.D.C. 1997).  If the information provided

by the government agency regarding any withheld material is not sufficient for the agency to

carry its burden of justifying the withholding, the district court has discretion to review the

withheld material *in camera*.  5 U.S.C. § 552(a)(4)(B).

Moreover, even where withholdings of material found in agency records are appropriate,

FOIA places an affirmative duty on agencies to provide any "reasonably segregable" non-exempt

portion of an otherwise exempt record.  5 U.S.C. § 552(b).

## B.      FOIA Exemption 5 and the Deliberative Process Privilege

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5).  Courts have "'emphasiz[ed] the narrow scope

of Exemption 5. . . .  The exemption is to be applied as narrowly as consistent with efficient

[g]overnment operation.'"  Lee v. Fed. Deposit Ins. Corp., 923 F. Supp. 451, 457 (S.D.N.Y.

1996) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir.

1980)) (other internal quotation marks omitted).

With respect to Exemption 5, Defendants primarily apply – and Plaintiff primarily

contests – the deliberative process privilege.  Hershowitz Decl. ¶¶ 17-19, Exs. L-M.  "In order

for a document to be protected by deliberative process privilege, it must be: (1) an inter-agency

or intra-agency document; (2) 'predecisional'; and (3) 'deliberative.'" <u>Tigue v. U.S. Dep't of Justice</u>, 312 F.3d 70, 76 (2d Cir. 2002).  For withheld material to qualify as "predecisional," it must relate to a discrete agency decisionmaking process, and it must have been "prepared in order to assist an agency decisionmaker in arriving at his decision." <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975).  Further, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formation or exercise of policy-oriented judgment." <u>Grand Cent. P'ship</u>, 166 F.3d at 482 (quoting <u>Ethyl Corp. v. EPA</u>, 25 F.3d 1241, 1248 (4th Cir. 1994)).   In order to be found "deliberative," the withheld material must "'actually [be] related to the process by which policies are formulated.'" <u>Hopkins v. Dep't of Housing & Urban Dev.</u>, 929 F.2d 81, 84 (2d Cir. 1991) (quoting <u>Jordan v. U.S. Dep't of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)). Accordingly, the "privilege 'focuses on documents reflecting advisory opinion[s], recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" and the "privilege does not, as a general matter, extend to purely factual material." <u>Id.</u> at 84-85 (quoting <u>Nat'l Labor Relations Bd. v. Sears, Roebuck, & Co.</u>, 421 U.S. 132, 150 (1975)) (other internal citation omitted).

## STATEMENT OF FACTS

**A.    Illegal Logging and Trade of Peruvian Mahogany**

Illegal logging threatens not only bigleaf mahogany's survival, but also the survival of the Amazonian rainforest ecosystem of which it is an integral part and the indigenous peoples whose homes the illegal loggers invade.  Hershowitz Decl. ¶¶ 3-6, Exs. A-C, I-J, M.  Bigleaf mahogany is often extracted in Peru from protected natural areas and indigenous reserves in violation of Peruvian law, as well as the Convention on International Trade in Endangered

Species ("CITES").  <u>Id.</u> ¶¶ 4-6, 13-15, 19, Exs. A-C, I-J, M.  As a party to CITES, the United

States is obligated to refuse entry to any imports traded in violation of the Convention.  <u>Id.</u> ¶¶ 6-

7, Exs. A-C.  On March 10, 2006, NRDC, on behalf of itself and two Peruvian indigenous

organizations, sent separate letters to a group of United States Government agencies and a group

of private timber importers, notifying them, pursuant to 16 U.S.C. § 1540(g), of the non-profit

groups' intent to sue them under the federal Endangered Species Act ("ESA") for violations of

CITES as incorporated into the ESA by 16 U.S.C. § 1538(c).  <u>Id.</u> ¶ 7, Exs. B-C.

**B.    <u>NRDC FOIA Requests to DOS</u>**

As part of a multi-pronged campaign to end traffic in illegally logged Peruvian

mahogany, NRDC first requested DOS records relating to logging and/or trade in Peruvian

mahogany on July 11, 2006.  <u>Id.</u> ¶¶ 3, 5-8, Exs. A-D.  NRDC requested three categories of

records, but indicated that the first-listed category was its highest priority:  "[a]ny cable,

communication or other record sent on or around April 19, 2006 from the United States Embassy

in Peru" relating to the logging and/or trade of Peruvian bigleaf mahogany.  <u>Id.</u> ¶ 8, Ex. D.  After

over nine months passed without DOS disclosing any responsive records, NRDC submitted a

second, follow-up FOIA request on April 24, 2007.  <u>Id.</u> ¶ 12, Ex. H.  NRDC seeks this

information to educate the public about illegal logging and to inform its participation in

discussions of the issue at the CITES Conference of the Parties, as well as in the U.S. Congress,

where measures relating to the illegal logging of mahogany were incorporated into the U.S.-Peru

free agreement signed by President Bush on December 14, 2007.  <u>Id.</u> ¶¶ 13-15, 19, Exs. I-J.

**C.    <u>DOS' Inadequate Response</u>**

DOS provided no responsive records to NRDC until after NRDC commenced this

lawsuit, over a year after NRDC's first FOIA request.  <u>Id.</u> ¶¶ 12, 15-16, Ex. K.  In addition, DOS

initially denied NRDC's request for a statutory waiver of the fees associated with responding to the FOIA request, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), only to reverse its denial after NRDC filed suit.  Id. ¶¶ 9-11, 16, Exs. D-G, K.  DOS has now provided approximately 85 documents responsive to the two FOIA requests, while withholding dozens of other documents in whole or in part under FOIA Exemption 5.  Id. ¶ 17, Ex. L.  Following a conference with the parties on November 9, 2007, the Court directed DOS to provide NRDC with a Vaughn index, which it did on January 28, 2008.  Id. ¶¶ 17-18, Ex. L.

## ARGUMENT

DOS has asserted the deliberative process privilege, as incorporated into Exemption 5, as the principal basis for withholding approximately 86 documents in full or in part.  Id. ¶ 17, Ex. L.  While NRDC believes that many of these withholdings are, at the least, overbroad, NRDC only challenges one such withholding because it pertains to a document of particular importance to the public's understanding of the United States Government's knowledge of the illicit timber trade from Peru.  Id. ¶¶ 18-19.  As noted above, NRDC had specifically indicated to DOS in its original FOIA request that an April 2006 cable from the United States Embassy in Peru was its top priority in requesting documents under FOIA.  Id. ¶¶ 8, 12, 18, Exs. D, H.  DOS redacted portions of this document before releasing it to NRDC, and now asserts in its Vaughn index that the redacted material is exempt from disclosure because it "contains opinions and reveals deliberations by decision-makers."  Id. Ex. L at 8.

When an agency seeks to withhold information under FOIA which, even on the agency's version of the facts, falls outside of the proffered exemption, summary judgment in favor of the plaintiff is appropriate.  See Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).  In this case, with respect to the April 6, 2006 document, DOS has not

shouldered its burden of proving that its withholding of redacted material was proper under FOIA Exemption 5, for two reasons.

First, DOS's Vaughn index entry with respect to the April 6, 2006 document (document "E8"), see Hershowitz Decl. Ex. L at 8, is deficient on its face. Unlike many of DOS's other Vaughn index entries for Exemption 5 withholdings, see generally id. Ex. L, DOS's entry for E8 does not assert that the withheld material is "predecisional" or otherwise identify how the document "bear[s] on the formation or exercise of policy-oriented judgment," as is required to invoke the privilege. Grand Cent. P'ship, 166 F.3d at 482. In the absence of a specific description of the withheld material that demonstrates that it was "predecisional," DOS cannot carry its burden of proving that the material is properly withheld under FOIA Exemption 5. See id. at 482-84; see also Maricopa Audubon Soc'y v. Forest Serv., 108 F.3d 1089, 1094 (9th Cir. 1997) (In FOIA cases, an agency cannot merely assert that documents are protected as part of "continuing process of agency self-examination"; rather, the burden is on the agencies to "identify a specific decision to which the document is predecisional.").

Second, even if DOS could get past this hurdle, a review of the April 6, 2006 cable itself suggests that the withheld material is factual. See Grand Cent. P'ship, 166 F.3d at 482 (privilege generally does not apply to "purely factual" material). The cable, entitled "Illegal Logging Thrives in Peru," summarizes "facts on the ground" in Peru, as observed by Embassy officials, following United States Government agencies' receipt of a March 10, 2006 ESA notice letter. See Hershowitz Decl. ¶¶ 6-7, 19, Exs. A-C, M. On the same date, NRDC also sent a separate notice letter to a group of private timber importers. Id. ¶ 7, Ex. C. The April 6, 2006 cable specifically references NRDC's notice letters, reporting reactions to them from a trade group in Peru, while at the same time confirming many of the notice letters' factual assertions, as well as

the general conclusion that much, if not all, of Peru's mahogany exports were illegal.  Id. ¶ 19,

Ex. M.  Nothing within the released portions of the April 6, 2006 cable suggests that the withheld

material is anything other than factual.

Accordingly, the Court should order DOS to release the April 6, 2006 cable in full.  At a

minimum, the Court should review the document *in camera* to determine whether DOS is

faithfully complying with its obligations under FOIA.  See 5 U.S.C. § 552; cf. Natural Resources

Defense Council, Inc. v. Nat'l Marine Fisheries Serv., 409 F. Supp. 2d 379, 384 (S.D.N.Y. 2006)

(ordering release of material withheld as protected by deliberative process privilege following *in

camera* review).

## CONCLUSION

For the reasons set forth above, NRDC respectfully urges the Court to grant its motion for

summary judgment, and to direct DOS to release expeditiously the withheld portions of the

April 6, 2006 cable.

Dated: February 8, 2008
           Washington, DC                          Respectfully submitted,


                                                    _s/_____
                                                    Thomas Cmar (TC 8791)
                                                    NATURAL RESOURCES DEFENSE COUNCIL
                                                    1200 New York Ave., N.W., Ste. 400
                                                    Washington, DC  20005
                                                    Phone:  (202) 289-2405
                                                    Fax:  (202) 289-1060

                                                    Mitchell S. Bernard (MB 5823)
                                                    NATURAL RESOURCES DEFENSE COUNCIL
                                                    40 West 20th Street
                                                    New York, NY  10011
                                                    Phone:  (212) 727-2700
                                                    Fax:  (212) 727-1773

                                                    Counsel for Plaintiff