UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                :
NATURAL RESOURCES DEFENSE        :   **DECLARATION OF ARI**
COUNCIL, INC.,                                  :   **HERSHOWITZ PURSUANT TO**
                                                :   **FEDERAL RULE OF CIVIL**
      Plaintiff,                         :   **PROCEDURE 56(e)**
                                                :
  - v. -                                     :   07 Civ. 5929 (WHP)
                                                :
UNITED STATES DEPARTMENT         :   ECF Case
OF STATE,                                       :
                                                :
      Defendant.                       :
---------------------------------------------------------x

I, Ari Hershowitz, make the following declaration:

1.  I am the Director of the Latin American BioGems Program for the Natural Resources Defense Council, Inc. ("NRDC"), the plaintiff in the above-captioned case. I am submitting this declaration in support of NRDC's motion for summary judgment. I make this declaration based on my own knowledge. The statements contained in this declaration are true and correct to the best of my knowledge and, in the case of my opinions, I believe them to be true. If called as a witness, I could and would testify competently to the statements contained herein.

2.  NRDC is a not-for-profit, environmental membership organization with headquarters in New York, New York. Founded in 1970, NRDC represents more than 420,000 members and activists nationwide. NRDC's mission statement declares that the organization's purpose "is to safeguard the Earth: its people, its plants and animals, and the natural systems on which all life depends." The mission statement goes on to declare that NRDC works "to restore the integrity of the elements that sustain life – air, land, and water – and to defend endangered natural places."

3.   Consistent with this mission, NRDC's membership and staff of lawyers, scientists, and other environmental specialists have been engaged in activities to combat environmental threats that transcend national borders throughout the organization's history.  NRDC has a long history of lobbying, litigation, and public education efforts targeting the preservation of Latin American wildlands.  In particular, NRDC has, for the last six years, engaged in a multi-pronged campaign to end traffic in illegally logged bigleaf mahogany (*Swietenia macrophylla*) from the Peruvian Amazon and the deleterious consequences of logging to indigenous peoples in Latin America.

4.   Illegal logging of bigleaf mahogany trees takes a serious toll (a) on the species itself, (b) on the tropical ecosystems in which it is found, and (c) on the indigenous peoples living in the remote regions of the Amazon rainforest.  The species, which once ranged from southern Mexico to the Amazon, has been logged out of most of Central America and now exists only in pockets of Brazil, Bolivia, and Peru.  With stricter controls on the lawful harvest and export of mahogany now in place in Brazil, and with the depletion of populations in Bolivia, Peru has become the major exporter of this wood, which is often extracted from protected natural areas and indigenous reserves in violation of Peruvian law.  Illegal logging of mahogany in these areas is associated with hunting of endangered wildlife, roadbuilding, and other practices that decimate local wildlife populations and accelerate deforestation.  In addition, illegal loggers threaten the survival of indigenous peoples living in voluntary isolation, bringing disease and engaging in violent, often deadly conflicts with these peoples.

5.   NRDC has been at the forefront of national and international efforts to protect bigleaf mahogany since 1992, when NRDC prepared a comprehensive scientific analysis of the impact of trade on the species and recommended its listing on Appendix II of the Convention on International Trade in Endangered Species ("CITES").  In January 2001, NRDC placed the

Tahuamanu rainforest in the Madre de Dios region of the Peruvian Amazon on its "BioGems" list of threatened ecosystems, due to the effects of illegal mahogany logging. In letters, emails, and meetings, NRDC staff and members have urged the Peruvian and United States governments institute stricter controls on the mahogany trade in order to stop the illegal logging of this species. In November 15, 2002, responding to the decline of the species over the previous decade, and at the urging of NRDC and other organizations, the Conference of the Parties of CITES voted to include bigleaf mahogany on Appendix II of the Convention. The listing went into effect on November 15, 2003.

6. CITES requires that designated authorities in exporting countries, prior to issuing any valid export permit for an Appendix II-listed species, make specific findings that (a) trade in the species is not detrimental to its survival, and (b) that the specimens for which export is sought were lawfully acquired under the laws of that country. In the months and years following bigleaf mahogany's listing under CITES Appendix II, NRDC continued to receive reports and documents indicating that most of the mahogany exported from Peru did not meet these criteria. NRDC and other organizations alerted United States Government authorities to these CITES violations and urged them to ensure proper implementation of bigleaf mahogany's Appendix II listing. For example, in one such communication with the United States Fish and Wildlife Service ("FWS") in September 2004, NRDC and Defenders of Wildlife pointed out that Peru's failure to meet the criteria for Appendix II species made the country's CITES export permits for bigleaf mahogany invalid, and that, therefore, under CITES, the United States Government was obligated to refuse entry into the United States to mahogany exports from Peru. A true and correct copy of this letter to FWS is attached as Exhibit A.

7. On March 10, 2006, NRDC, on behalf of itself and two Peruvian indigenous organizations, sent separate letters to a group of United States Government agencies and a group of private timber importers, notifying them, pursuant to 16 U.S.C. § 1540(g), of the non-profit groups' intent to sue them under the federal Endangered Species Act ("ESA") for violations of CITES as incorporated into the ESA by 16 U.S.C. § 1538(c). A true and correct copy of the notice letter sent to the United States Government agencies is attached as Exhibit B. A true and correct copy of the notice letter sent to the private timber importers is attached as Exhibit C.

8. On July 11, 2006, NRDC sent a request to the United States Department of State ("DOS") for the disclosure of records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), and the applicable DOS regulations, 22 C.F.R. pt. 171. NRDC requested three categories of records relating to the logging and/or trade of Peruvian bigleaf mahogany. NRDC indicated in the request that the first-listed category of records was its highest priority: "[a]ny cable, communication or other record sent on or around April 19, 2006 from the United States Embassy in Peru" relating to the logging and/or trade of Peruvian bigleaf mahogany. A true and correct copy of NRDC's July 11, 2006 FOIA request is attached as Exhibit D.

9. DOS responded to NRDC's July 11, 2006 FOIA request in a letter dated July 26, 2006. The DOS letter stated that it would "begin processing the request," but that DOS had decided to deny NRDC a statutory waiver of the fees associated with responding to the FOIA request, which NRDC had requested pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). A true and correct copy of DOS's July 26, 2006 letter to NRDC is attached as Exhibit E.

10. NRDC timely appealed the fee waiver denial on August 9, 2006, providing a detailed explanation of how its original request met the criteria set forth in 5 U.S.C. § 522(a)(4)(A)(iii) and DOS's implementing regulations at 22 C.F.R. § 171.17(1). The Appeal cited articles in

major national newspapers concerning illegal mahogany traffic from Peru and Brazil, statements from various federal officials on the importance to U.S. policy of stopping the illegal mahogany trade, and included, as attachments, fourteen documents demonstrating NRDC's track record over twenty years of disseminating information to the public that it had obtained from FOIA requests.  A true and correct copy of NRDC's August 9, 2006 letter appealing the fee waiver denial (submitted here without its voluminous attachments) is attached as Exhibit F.

    11. In a November 6, 2006 letter, DOS denied NRDC's fee waiver appeal.  A true and correct copy of DOS's November 6, 2006 letter to NRDC is attached as Exhibit G.

    12. After over nine months passed without DOS disclosing any records in response to NRDC's July 11, 2006 FOIA request, NRDC submitted a second, follow-up FOIA request on April 24, 2007, again seeking disclosure of records relating to the logging and/or trade of Peruvian bigleaf mahogany.  The April 24, 2007 FOIA request reiterated that NRDC was particularly interested in the disclosure of any cable, communication, or other record sent on or around April 19, 2006 from the United States Embassy in Peru.  A true and correct copy of NRDC's April 24, 2007 FOIA request is attached as Exhibit H.

    13. While NRDC was awaiting responsive documents from DOS, NRDC continued to press for implementation of the Appendix II listing of mahogany within the governing bodies of CITES and in the context of trade negotiations between the United States and Peru.  The trade in mahogany and other timber species was a centerpiece of negotiations at the Conference of the Parties of CITES ("CITES COP") in The Hague, Netherlands, in June 2007, which I attended, and was featured in the international media coverage of those negotiations as well.  For example, a widely-distributed Associated Press ("AP") wire story on proposals to restrict trade in timber

14. The illegal logging and trade of bigleaf mahogany also became a major issue in ongoing trade negotiations between the United States and Peru and in the public debate about these negotiations. The final U.S.-Peru Trade Promotion Agreement, which was signed by President Bush on December 14, 2007, includes a Forest Governance Annex specifying steps to be taken by both governments to address the trade in illegally logged timber. The Forest Governance Annex was also featured in media reports about the US-Peru negotiations. For example, an article in the October 6, 2007 edition of *The Economist* described the debate in Congress over the illegal timber trade, with the subtitle "The Democrats in the United States take on the loggers in Peru." A true and correct copy of the October 6, 2007 article in *The Economist* is attached as Exhibit J.

15. NRDC had intended to use documents responsive to its two FOIA requests to inform its participation in discussions with CITES Parties and the public leading up to the June 2007 CITES COP, as well as to inform NRDC's participation in discussions with congressional members and staff and the public on the U.S.-Peru trade agreement. The documents continue to be valuable to inform the public about the gravity of illegal logging in Peru and the importance of effective implementation of the Forest Governance Annex to the U.S.-Peru trade agreement.

16. Only after NRDC filed this lawsuit, on July 21, 2007, did DOS begin to respond to NRDC's FOIA requests. On August 20, 2007, counsel for DOS wrote a letter to counsel for NRDC, informing NRDC that DOS would finally begin to provide documents in response to NRDC's FOIA requests. The letter further stated that DOS had decided to reverse its earlier denial of NRDC's fee waiver request, granting NRDC a statutory waiver of fees associated with

6

responding to the two FOIA requests. A true and correct copy of the August 20, 2007 letter is attached as Exhibit K.

17. DOS has now provided NRDC, either directly or through referrals to other agencies, with approximately 85 documents responsive to the two FOIA requests, while informing NRDC that it was withholding, in whole or in part, approximately 86 documents. Following a conference with the Court, on November 9, 2007, which I attended, the Court ordered DOS to produce a Vaughn index to NRDC, detailing its justifications for its redactions and withholdings, the production of which DOS had initially resisted. NRDC received DOS's Vaughn index on January 28, 2007, under a cover letter that was dated January 25, 2007. The cover letter indicated that, in its review of the documents, DOS determined that "additional material responsive to NRDC's requests is capable of being released" and would be sent under separate cover. A true and correct copy of DOS's Vaughn index is attached as Exhibit L.

18. DOS's Vaughn index indicates that DOS has principally withheld documents from NRDC based on a broad, sweeping interpretation of FOIA Exemption 5, on the ground that certain material is protected from disclosure by the deliberative process privilege. I believe that, given FOIA's requirement that all "reasonably segregable" factual material be released even where an exemption applies, there is likely to be a substantial additional material within the documents withheld in full or in part by DOS that the Court would find to be releasable, were it to review all of the withheld documents *in camera*. However, in light of NRDC's own limited litigation resources, and out of respect for the limited resources of the Court, NRDC has decided to focus its motion for summary judgment on one particularly important document: an April 6, 2006 document, which DOS released to NRDC in redacted form on October 29, 2007. I believe that this document, which is marked as document "E8" on page 8 of DOS's Vaughn index

7

concerning NRDC's July 11, 2006 request, is the document that NRDC originally identified as its top priority in its July 11, 2006 FOIA request. A true and correct copy of the redacted April 6, 2006 document which NRDC received from DOS is attached as Exhibit M.

19. The April 6, 2006 document, a cable from the United States Embassy in Peru with the subject heading "Illegal Logging Thrives in Peru," provides the clearest evidence to date that the United States knew that Peru's export permits for bigleaf mahogany were not valid under CITES. The cable provides data on forest concessions that were found to be operating illegally by the Peruvian government, and it describes many of the deficiencies in Peru's CITES permitting system. The cable also highlights the potential for addressing the illegal timber trade in the context of U.S.-Peru trade negotiations. The cable refers, in paragraph 16, to NRDC's March 10, 2006 notice letter and notes that Peru's export association, ADEX, had expressed concern about what ADEX had termed "misrepresentations of fact" in that letter. Nonetheless, the April 6, 2006 cable itself confirms many of the facts in NRDC's notice letter, as well as the notice letter's general conclusion that much, if not all, of the mahogany from Peru was being exported in violation of CITES. Many of the redactions in the April 6, 2006 document appear to be factual in nature, and/or otherwise not protected by the deliberative process privilege. Release of this material would provide a greater understanding to NRDC and the public, of the United States Government's knowledge of the illicit timber trade from Peru.

Pursuant to 28 U.S.C. § 1746, I declare and affirm under penalty of perjury that the foregoing is true and correct.

*/s/ Ari Hershowitz*
Ari Hershowitz
Executed in Bethesda, MD this 7th day of February, 2008.