# EXHIBIT A

 

September 10, 2004


Peter O. Thomas
Chief, Division of Management Authority
International Affairs
U.S. Fish and Wildlife Service
Fax: (703) 358-2280

Bud Petit de Mange
CITES and Plant Inspection Station Coordinator
USDA APHIS
Fax: (301) 734-5269

Dear Messrs. Thomas and Petit de Mange:

Thank you for your July 20, 2004 letter regarding the implementation of CITES for shipments of bigleaf mahogany from Peru. We appreciate your decision to inspect the shipments we indicated for mislabeled wood, and would welcome the results of these inspections. We also appreciate the clarifications in your letter and the efforts you have made to assist Peruvian authorities to establish a functioning management system for mahogany. We are writing now to urge you to put in place meaningful import controls to allow this management system a chance to work.

Our letter of June 28, 2004 expressed concerns that mahogany continues to be imported into the United States from Peru in the absence of a non-detriment finding by that country's Scientific Authority. As we pointed out, the requirement in Article IV §2(a) of CITES for a non-detriment finding by the Scientific Authority lies at the heart of the Convention; trade in Appendix II specimens without such a finding is a serious violation of CITES and, in the United States, of the Endangered Species Act (ESA).[1]

---

[1] *See, e.g., Castlewood Products, LLC v. Norton*, 365 F.3d 1076, 1084 (D.C. Cir. 2004) ("The ESA specifically prohibits trade contrary to the provisions of the Convention, 16 U.S.C. § 1538(c), and provides that any specimens that are imported in violation of the ESA are subject to forfeiture to the United States, 16 U.S.C. § 1540(e)(4)(A).")

1

It is apparent from the Peruvian National Report to the International Timber Trade Organization (ITTO) workshop in Pucallpa, and from your recent letter, that large quantities of mahogany continue to enter the United States under CITES permits granted without the required non-detriment determinations by Peru's Scientific Authority. Therefore, by the clear terms of Article IV of CITES, these permits are not valid, and the continued entry of mahogany from Peru into the United States represents a violation of both CITES and the ESA.

In light of the rapid depletion of mahogany populations in Peru, we urge you to work with Peruvian authorities to immediately rectify this serious breach of international and U.S. law.  This will require a transparent system to ensure that CITES permits are only granted in accordance with valid non-detriment findings by Peru's Scientific Authority. These findings, should, at a minimum, require that wood is sourced from concessions with management plans that include annual operating plans, forest inventories, and the other components recommended by the second Mahogany Working Group Meeting in Belem, Brazil.

In your letter, you note the import of 77 shipments of bigleaf mahogany that were exported from Peru on or after November 15, 2003, when the Appendix II listing for the species went into force.  You state that the "Peruvians" reported at the ITTO workshop that they made their "non-detriment finding" for shipments of mahogany exported between November 15, 2003 and June 30, 2004 based on the fact that the wood was harvested prior to November 15, 2003.  As you acknowledged, this harvest date does not exempt the wood from the requirements of CITES Appendix II as "pre-Convention" specimens.   In the absence of such an exemption, there is no rational basis for a finding that wood harvested before this date is not detrimental to the species.   According to Res. Conf. 10.3 (h), findings and advice of the Scientific Authority are to be "based on the scientific review of available information on the population status, distribution, population trend, harvest and other biological and ecological factors, as appropriate, and trade information relating to the species concerned."  The Scientific Authority has not conducted such a review in Peru, and identifying the harvest date of the mahogany is no substitute.  In fact, mahogany harvested before November 15, 2003 was more, not less, likely to be harvested illegally or unsustainably, due to the slow development of concession management plans, which are only now being put into place.

Beyond the 77 shipments referenced in your letter, a steady stream of mahogany shipments continues to arrive from Peru.   Since the date of your letter, at least 15 additional 15 shipments, totaling nearly 1400 m$^3$ of mahogany, have left Peru bound for U.S. markets.[2]  These and other shipments exported since June 30,2004 lack even the pretext of a non-detriment finding by the Scientific Authority.  While we realize that CITES permits may accompany these shipments, it is evident that these permits are not valid.  Accordingly, U.S. obligations under CITES require that you refuse to accept these permits, as the lack of a Scientific Authority non-detriment finding in this case not only "brings into question the validity of the permit or certificate", Res. Conf. 12.3 Section XIV (d), but virtually guarantees that the wood was logged illegally and/or unsustainably.

---

[2] An additional 500 m3 of wood labeled as "cedar" has also been exported, much of it exported from the same exporters on the same date as mahogany exports, under sequentially numbered CITES permits.

Immediate action to stop further imports under these conditions is essential to secure the effectiveness of efforts by Peruvian authorities to fight illegal logging and establish a management system for mahogany exports.

Our organizations are sensitive to the challenges facing CITES implementation efforts for mahogany and to the significant efforts the United States is undertaking to aid mahogany exporting Parties in meeting their CITES obligations.  We are equally sensitive, however, to the very damaging precedent that continued non-implementation of CITES will set for other CITES-listed timber species.  The problems of such a precedent are most immediate and most acute in the case of Indonesian ramin (*Gonystylus* spp.), another high value, high volume timber species whose illegal exploitation spurs environmental destruction across a vast and biologically rich region, jeopardizing not only ramin itself, but the many endangered species that share its habitat. The parallels between mahogany and ramin are not lost on the conservation community.  Nor will they be lost on those who oppose increased protection for ramin. There is substantial support for the ramin listing proposal at CITES COP 13, and we are cautiously optimistic that the proposal will be adopted.  Yet the continued weak implementation and lax enforcement of CITES standards for mahogany sends a strong political and market signal to ramin exporters—governments and contractors alike—that the status quo can be maintained for an indefinite period even in the wake of an effective listing effort.  It is not unreasonable to suppose that ramin exporters will seek treatment for their products no less favorable than mahogany has received—both before and after the listing becomes effective.  Neither ramin itself nor the critically endangered orangutans who share ramin forests can afford such laxity.  Time is the enemy of these species, as it is of mahogany.

The decision to list big-leaf mahogany under Appendix II was taken more than twenty-one months ago, and the listing went into effect more than nine months ago.  Nonetheless, reports from our Peruvian partners confirm that mahogany logging continues to take place illegally from indigenous reserves and natural protected areas.  The timber taken therefrom is then laundered using permits from agricultural small holdings (predios) that no longer contain mahogany.

Allowing wood to enter the United States with invalid CITES certificates accelerates the depletion of mahogany toward the point where implementation of the treaty will be largely moot.  Recent estimates indicate that mahogany has been logged to commercial extinction in 79% of its former range in Bolivia and more than half of its range in Peru.  Commercial extinction in Peru is likely within five years, even in protected areas.[3]  The continued flow of imports of mahogany under current conditions brings commercial extinction of the species closer and undermines efforts of concession-holders in Peru and of other range states to implement CITES.  Similarly, these imports place pressure on other range countries to lower their standards of CITES implementation in order to remain competitive.  The current system rewards those willing to drive mahogany toward commercial extinction for short-term gain.  The longer this situation persists, the greater the likelihood ramin exporters will seek similar rewards.  Full and effective implementation of CITES can no longer be delayed.

---

[3] Kometter, R. F., M. Martinez, A. G. Blundell, R. E. Gullison, M. K. Steininger, and R. E. Rice. 2004. Impacts of unsustainable mahogany logging in Bolivia and Peru. Ecology and Society **9**(1): 12. [online] URL: http://www.ecologyandsociety.org/vol9/iss1/art12.

3

We believe the United States recognizes the urgent need for action; and we welcome the clear committment that the U.S. has expressed via its embassies to implement CITES at U.S. ports. To be meaningful, however, this implementation must include verification that any CITES permit for mahogany is supported both by a valid non-detriment finding and by a substantively valid finding of legal origin. The mahogany population assessment project recently approved for funding by the ITTO represents a major step forward in this process; but that project will take considerable time. In the interim, large volumes of mahogany continue to flow from Peru to the United States.

In your letter, you indicate that the second Mahogany Working Group in Belem, Brazil, and the ITTO workshop in Pucallpa downplayed the importance of country-wide population inventories relative to the need to focus on the existence and quality of management areas and forest management plans. Unfortunately, to date, mahogany has been exported without regard to either a country-wide inventory or to management plans. The second Mahogany Working Group recommended that "only wood originating under Management Plans should be accepted for export under Appendix II" and set out the minimum requirements for such plans, including a commercial census of management areas. Your express commitment to these recommendations will provide important backing for efforts in Peru to halt illegal logging and establish a functioning management system for mahogany.

The mechanisms for bi-lateral cooperation are already in place, and gain increasing prominence as the U.S.-Andean trade negotiations move forward. Coordination to ensure that no more mahogany shipments enter the U.S. without valid CITES permits would be a simple, but important achievement of this partnership. We hope that this achievement can be reported at the upcoming COP-13 meeting in Bangkok.

Sincerely,

Ari Hershowitz
Director, BioGems Project Latin America
Natural Resources Defense Council

Wm. Carroll Muffett
Director of International Programs
Defenders of Wildlife

cc:   Hon. Max Baucus, United States Senate
      Mark Linscott, Office of United States Trade Representative
      David Brooks, Office of the United States Trade Representative
      Joseph G. Block, Chair, Trade and Environment Policy Advisory Committee