EXHIBIT F



**NRDC**

THE EARTH'S BEST DEFENSE

NATURAL RESOURCES DEFENSE COUNCIL

August 9, 2006

VIA CERTIFIED MAIL

Charlene Wright Thomas
Chief, Requester Liaison Division
Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100

**Re:      APPEAL OF FEE WAIVER DENIAL OF FREEDOM OF INFORMATION ACT
REQUEST REGARDING LOGGING AND/OR TRADE OF BIGLEAF MAHOGANY
FROM PERU**

Dear Ms. Charlene Wright Thomas:

On behalf of the Natural Resources Defense Council ("NRDC"), I write to appeal the U.S. Department of State's Office of Information Programs and Services ("DOS") denial of NRDC's Freedom of Information Act ("FOIA") request under 5 U.S.C. § 552. This appeal is timely, having been made within 30 days of receipt of DOS's denial. In this appeal, I request that your office re-evaluate the initial determination and take into consideration the enclosed materials as both part of the appeal to the fee waiver denial and as supplemental information supporting our initial request for a fee waiver.

It should be noted, as further described below, that NRDC is regularly granted fee waivers for FOIA requests to Federal agencies. In fact your office previously granted NRDC a fee waiver, after our appeal, in a FOIA request for records pertaining to offshore oil drilling in Costa Rica. That request (number 200201965) was sent on June 7, 2002. As here, your office denied the fee waiver without any explanation. Our appeal and the fee waiver were granted on July 1, 2002. It is clear that NRDC meets the criteria for fee waivers, and the initial denial appears to be no more than a delay tactic, in fulfilling the requirements of FOIA.

**I.      Background**

By letter dated July 11, 2006, NRDC requested the following documents from DOS:

1.      Any cable, communication or other record sent on or around April 19, 2006 from the United States Embassy in Peru relating to the logging and/or trade of bigleaf mahogany (*Swietenia macrophylla*) from Peru.

2.      Any records prepared after March 10, 2006 relating to the logging and/or trade of bigleaf mahogany (*Swietenia macrophylla*) from Peru.

3.      Any other records created after November 15, 2003 relating to the logging and/or trade of bigleaf mahogany (*Swietenia macrophylla*) from Peru.

www.nrdc.org          1200 New York Avenue, NW, Suite 400          NEW YORK  ·  LOS ANGELES  ·  SAN FRANCISCO
Washington, DC 20005
TEL 202 289-6868   FAX 202 289-1060

100% Postconsumer Recycled Paper                                                                                    21

<u>We requested these records on a rolling basis, with priority given to the April 19, 2006 record</u>.  If you do not plan to send this record separately from the others, we request the opportunity to speak with the officer in charge of our request, to discuss ways to expedite the disclosure of this particular record.

DOS responded to this FOIA request by letter dated July 26, 2006, and denied the fee waiver request, with no explanation for the basis of this denial.  In a telephone conversation on August 3, 2006, Tom Everett of your office said that he did not know the basis for the denial but would seek this information.  In a follow-up conversation on August 8, 2006 Mr. Everett stated that the fee waiver was denied because we had not answered each of the requirements of 22 CFR § 171, but could not provide any more specific reasons for the denial, or what elements of the regulation were missing in our original request.  Without more detailed information on the basis of the denial, we submit the following information to cover all possible reasons for denial of a fee waiver.

## II.    Request for a Fee Waiver

NRDC requests that the U.S. Department of State waive the fee that it otherwise would charge for search and production of the records described in Section I, above.  FOIA dictates that requested records be provided without charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); <u>see also</u> 22 CFR § 171.15.  As I describe below, the disclosure sought meets this standard.  In addition, NRDC qualifies as a non-commercial scientific institution entitled to a reduction of fees under the FOIA.

### a.   First Requirement

The requested disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government." 5. U.S.C. § 552(a)(4)(A)(iii).  Specifically, it would satisfy the four elements identified at 22 CFR § 171.15.

#### i.   "Identifiable Operations or Activities of the Federal Government"

First, the records described in Section I, above, reveal "identifiable operations or activities of the Federal government." 22 CFR § 171.15.  In particular, the records shed light on the information relating to the logging and/or trade of bigleaf mahogany from Peru, and ongoing Federal government programs aimed at illegal logging.  Furthermore, the records provide a more substantive understanding of the role of the State Department in policies regarding international natural resource use, trade in endangered species, and activities that could affect globally significant ecosystems and vulnerable indigenous peoples.

#### ii.   "Meaningfully informative"

Second, the requested records are "meaningfully informative" of the influences in question, 22 CFR § 171.15, in that they constitute a documentary history of the aforementioned information and influences.

#### iii.   "Contribute to the understanding of a reasonably broad audience of persons interested in the subject"

Third, disclosing the requested records to NRDC would "contribute to the understanding of a reasonably broad audience of persons interested in the subject," 22 CFR § 171.15, because NRDC

2

would create a clear synthesis of the records and then disseminate that information widely. The information I seek is of sufficient value, newsworthiness or otherwise of public interest, that I could foresee disseminating relevant portions of the information more broadly through NRDC's OnEarth publication, press releases or media advisories, email alerts, and other available channels for dissemination described below.

NRDC websites experience approximately 2.5 million page views and approximately 700,000 visits per month; NRDC's Earth Action email list has over 165,000 subscribers receiving information every two weeks; NRDC sends newsletters and alerts to over 550,000 individuals several times per month; NRDC sends its legislative watch bulletin to over 30,000 individuals every other week during Congressional sessions; NRDC provides Congressional testimony; NRDC regularly schedules press conferences, interviews with reporters and editorial writers; NRDC employees appear on television, radio programs, webcasts, and in numerous and various national newspapers, newsletters, magazines, other periodicals, and books; and NRDC regularly organizes and participates in conferences. (See Attachments 1 and 2, examples of NRDC Earth Actions)

Further, the news media contain abundant illustrations of (1) public interest in protecting Mahogany logging in Peru,[1] and (2) NRDC's proven track record of widely disseminating government information that it has obtained through FOIA requests.

In addition to its Web site (www.nrdc.org) which is updated daily, NRDC has numerous means to disseminate information to the public widely, including numerous and varied publications, educational programs, media initiatives, and public interest litigation. For example, NRDC publishes Nature's Voice five times a year and distributes the publication to the organization's approximately 600,000 active members. NRDC also publishes a magazine, OnEarth, which is distributed to more than 150,000 subscribers and is also distributed for sale to newsstands and bookstores. OnEarth is available online free of charge at http://www.nrdc.org/onearth/05spr/default.asp. In addition, NRDC regularly distributes information and alerts to more than 500,000 online activists. A selection of the current alerts is posted at http://www.nrdcaction.org/action/index.asp?step=2&item=52527.

NRDC routinely uses FOIA to obtain information from federal agencies that NRDC legal and scientific experts analyze in order to inform the public about a variety of issues including energy policy, urban air pollution, water pollution, climate change, and nuclear weapons. Some specific examples are provided below:

(1)        NRDC obtained through a FOIA request a memorandum by ExxonMobil advocating the replacement of a highly respected atmospheric scientist, Dr. Robert Watson, as the head of the Intergovernmental Panel on Climate Change. NRDC used this memorandum to help inform the public about what may have been behind the decision by the Bush Administration to replace Dr. Watson. See NRDC Press Release, "Confidential Papers Show Exxon Hand in White House Move to Oust Top Scientist from International Global Warming Panel," April 3,

---

[1]        See, e.g., Juan, Forero, "A Swirl of Foreboding in Mahogany's Grain," The New York Times, September 28, 2003; Howard FaFranchi, "With mahogany, Bush goes a shade greener," The Christian Science Monitor, Nov. 21, 2003; Miriam Jordan, "Brazilian Mahogany: Too Much In Demand --- Illegal Logging, Exports Are Lucrative for Criminals, Disastrous for Rain Forest," The Wall Street Journal (Eastern edition), Nov. 14, 2001, B.1.; see also, John Roach, "Amazon Tribes: Isolated by Choice?," National Geographic News, March 10, 2003. See e.g., H. Joseph Herbert "Groups Seek to Halt Peru Mahogany Imports," Washington Post, June 7, 2006.

2002. (Attachment 3);  Elizabeth Shogren, "Charges Fly Over Science Panel Pick," <u>Los Angeles Times</u>, April 4, 2002, at A19.  (Attachment 4)

(2)      In the summer of 2000, NRDC obtained information through FOIA regarding the levels of arsenic in drinking water supplies across the country.  NRDC made much of the information available on the NRDC web site and provided analysis describing its significance and guiding interested members of the public on how to learn more about arsenic in their own drinking water supplies.  See Steve LaRue, "EPA Aims to Cut Levels of Arsenic in Well Water," <u>San Diego Union-Tribune</u>, June 5, 2000, at B1.  (Attachment 5)

(3)      NRDC used information obtained through FOIA requests to produce and distribute a report analyzing the impacts of manure pollution from large livestock feedlots on fish and wildlife, as well as human health.  <u>Spills & Kills</u> (August 2000).  (Attachment 6)

(4)      NRDC used information obtained from numerous FOIA requests to publish five databooks between 1984 and 1994 describing the history of nuclear weapons programs in the United States, Soviet Union, Britain, France and China. (Attachment 7)

(5)      NRDC obtained through a FOIA request a Defense Department document, the <u>History of the Custody and Deployment of Nuclear Weapons:  July 1945 through September 1977</u>.  The document attracted significant press attention once it was disclosed.  <u>See, e.g.,</u> Walter Pincus, "Study Says U.S. Secretly Placed Bombs; Cold War Deployments Affected Mostly Allies," <u>Washington Post</u>, Oct. 20, 1999, at A3.  (Attachment 8)  One of NRDC's nuclear scientists, Robert Norris, published a detailed analysis of this document explaining its significance to the public.  Robert S. Norris, William M. Arkin, and William Burr, "Where They Were," <u>Bulletin of Atomic Scientists</u> (Nov/Dec 1999). (Attachment 9)

(6)      NRDC regularly publishes a Nuclear Notebook, often using information obtained through FOIA requests.   The Nuclear Notebook provides current information about the nuclear weapons programs of the United States and other nations.  It is published in each issue of the Bulletin of Atomic Scientists.  See, e.g., "U.S. Nuclear Forces, 2002," <u>Bulletin of Atomic Scientists</u>, May/June 2002 (Attachment 10).

(7)      In 1996, NRDC obtained through a FOIA request test results regarding lead levels in the District of Columbia's drinking water supplies.  NRDC made the test results public as well as analysis explaining the significance of the results.  See, D'Vera Cohn, "Tap Water Safeguards Still Stalled;  City Failed to Tell Some Residents of Excess Lead Contamination," <u>Washington Post</u>, April 18, 1996, at J1.  (Attachment 11)

(8)      In 1989, NRDC obtained through a FOIA request testimony by federal experts who opposed oil drilling off the coasts of California and Florida.  The Bush Administration had previously suppressed the testimony.  See Larry Liebert, "Oil Testimony Reportedly Quashed;  Environmentalists Say Federal Experts Pressured by Bush," <u>San Francisco Chronicle</u>, Oct. 5, 1989, at A6.  (Attachment 12)

(9)    In 1988, NRDC obtained through a FOIA request a report by the U.S. Fish and Wildlife service that declared that the government's review of offshore oil drilling in Northern California was incomplete and overly optimistic. Reagan Administration officials had tried to keep the report secret and then repudiated it upon its release. See Eric Lichtblau, "Federal Report Blasts Offshore Oil Studies," Los Angeles Times, June 4, 1988, at A32. (Attachment 13)

(10)    In 1982, NRDC obtained through a FOIA request a memorandum by the U.S. Environmental Protection Agency stating that most air pollution monitors have repeatedly underestimated levels of toxic lead in the air. NRDC used the memorandum to inform the public about the consequences of EPA's proposal to relax restrictions on lead in gasoline. See, Sandra Sugawara, "Lead in Air is Undermeasured, EPA Section Chief's Memo Says," Washington Post, July 11, 1982, at A6. (Attachment 14)

### iv.    Enhance public's understanding "to a significant extent"

Finally, the requested disclosure would enhance the public's understanding of the subject in question "to a significant extent." 22 CFR § 171.15. As noted in the preceding sections, there is a clear public interest in protecting endangered species, particularly the trade and logging of bigleaf mahogany from Peru. In addition, all three branches of the U.S. government have expressed that there is a clear public interest in stopping illegal logging and/or supporting endangered species.[2]

If DOS discloses the records requested in this letter, that disclosure will, though NRDC, provide the public with the reasonably complete understanding that the public desires and deserves, that being information on U.S. government policies that further protecting the public interest regarding endangered species.

### b.    Second Requirement

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request in that NRDC does not have "a commercial interest that would be furthered by the requested disclosure."

---

[2] Congress has made it clear that protecting endangered species is a matter of public interest by passing the Endangered Species Act. As stated in the original FOIA request dated July 11, 2006, trade and logging of bigleaf mahogany is an area of concern identified by former Secretary of State Colin Powell as part of the President's Initiative Against Illegal Logging (Remarks on the Launch of President Bush's Initiative Against Illegal Logging, July 28, 2003, see, http://www.state.gov/secretary/former/powell/remarks/2003/22845.htm). Similarly, the U.S. Department of Interior issued a press release stating that the U.S. supported stricter regulation for mahogany after "extensive dialogue with range nations." Assistant Secretary of State John Turner was quoted as saying, "As the major importer of bigleaf mahogany, the United States is committed to making this listing work," see, "CITES Conference Votes to Tightly Regulate International Trade in Mahogany," Press Statement, U.S. Department of the Interior, November 13, 2002, http://www.doi.gov/news/021114.htm. The U.S. judiciary, including the Supreme Court has consistently supported the public interest in protecting endangered species, see e.g., Tennessee Valley Authority v. Hill, 437 U.S. 153 (1978).

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request in that NRDC does not have "a commercial interest that would be furthered by the requested disclosure." 22 CFR § 171.15. NRDC is a not-for-profit organization and, as such, has no commercial interest. See id. 22 CFR § 171.15. "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citation omitted). NRDC's interest in obtaining the requested materials is to serve the public interest by disseminating newsworthy information about the role of the State Department in policies regarding international natural resource use, trade in endangered species, and activities that could affect globally significant ecosystems and vulnerable indigenous peoples to the public free of charge, as discussed above. As discussed below, NRDC is also a non-commercial scientific institution seeking information in the public interest.

### c.  NRDC Is a Non-commercial Scientific Institution

Even if the agency denies a public interest waiver of all costs and fees, NRDC is a non-commercial scientific institution entitled to a reduction of fees under the FOIA, 22 CFR § 171.14(b). NRDC has researched and disseminated information on the conservation status of the bigleaf mahogany species (*Swietenia macrophylla*) for more than a decade (see, e.g. Rodan, B.D. and Campell, F.T., CITES and the sustainable management of *Swietenia macrophylla* King, Botanical Journal of the Linnean Society, 122(1), September 1996). The records we seek would assist in providing information on the current status of the species and efforts to prevent its depletion in Peru, where some of the largest remaining stands of mahogany are found.

### III.     Willingness to Pay Fees Under Protest

As stated in the original FOIA fee waiver request dated July 11, 2006, please provide the records described above irrespective of the status and outcome of your evaluation of NRDC's fee waiver request. In order to prevent delay in DOS provision of the requested records, NRDC states that it will, if necessary and under protest, pay fees in accordance with 22 C.F.R. § 171 Subparts A & B. Please consult with me, however, before undertaking any action that would cause the fee to exceed two hundred and fifty dollars. No payment made under protest will constitute any waiver of NRDC's right to seek administrative or judicial review of any denial of its fee waiver request as provided under 22 C.F.R. § 171.15(c).

### IV.     Conclusion

Again, as noted in the original fee waiver request dated July 11, 2006, I trust that, in responding to this request, DOS will comply with all relevant deadlines and other obligations set forth in FOIA and the agency's regulations. See, e.g., 22 CFR § 171. Please produce the records above by sending them to me at the address appearing on the first page of this letter. Please produce them on a rolling basis; at no point should DOS search for – or deliberations concerning – certain records delay the production of others that the agency has already retrieved and elected to produce.

Please call me with any questions. Thank you for your prompt consideration of this appeal.

Respectfully submitted,

Ari Hershowitz, Director, BioGems Project, NRDC
Natural Resources Defense Council, Washington, DC
(202) 289-2388