UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
NATURAL RESOURCES DEFENSE      :   **PLAINTIFF'S STATEMENT**
COUNCIL, INC.,                 :   **PURSUANT TO LOCAL CIVIL**
                               :   **RULE 56.1**
            Plaintiff,         :
                               :
     - v. -                    :   07 Civ. 5929 (WHP)
                               :
UNITED STATES DEPARTMENT       :   ECF Case
OF STATE,                      :
                               :
            Defendant.         :
---------------------------------------------------------x

**Plaintiff's Statement Under Local Civil Rule 56.1**

Pursuant to Rule 56.1(a) of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff Natural Resources Defense Council, Inc. ("NRDC") states the following material facts as to which there is no genuine issue in support of Plaintiff's motion for summary judgment, as follows:

1. NRDC is a not-for-profit, environmental membership organization with headquarters in New York, New York. (Declaration of Ari Hershowitz, dated February 7, 2008 ("Hershowitz Decl.") ¶ 2.)

2. Founded in 1970, NRDC represents more than 420,000 members and activists nationwide. (Id.)

3. Consistent with its mission, NRDC has a long history of lobbying, litigation, and public education efforts targeting the preservation of Latin American wildlands. (Id. ¶ 3.)

4. NRDC has, for the last six years, engaged in a multi-pronged campaign to end traffic in illegally logged bigleaf mahogany (*Swietenia macrophylla*) from the Peruvian Amazon

and the deleterious consequences of logging to indigenous peoples in Latin America. (Id.)

5. Illegal logging of bigleaf mahogany trees takes a serious toll (a) on the species itself, (b) on the tropical ecosystems in which it is found, and (c) on the indigenous peoples living in the remote regions of the Amazon rainforest. (Id. ¶ 4, Ex. M.)

6. Bigleaf mahogany has been logged out of most of its former range in Central America and is found only in pockets of Brazil, Bolivia and Peru. With stricter controls on the lawful harvest and export of mahogany now in place in Brazil, and with the depletion of populations in Bolivia, Peru has become the major exporter of this wood. (Id. ¶ 4, Ex. M.)

7. Bigleaf mahogany is often extracted from protected natural areas and indigenous reserves in violation of Peruvian law. (Id. ¶ 4, Ex. M.)

8. Illegal logging of mahogany in these areas is associated with hunting of endangered wildlife, roadbuilding, and other practices that decimate local wildlife populations and accelerate deforestation. (Id. ¶ 4, Ex. M.)

9. In addition, illegal loggers threaten the survival of indigenous peoples living in voluntary isolation, bringing disease and engaging in violent, often deadly conflicts with these peoples. (Id. ¶ 4.)

10. NRDC has been at the forefront of national and international efforts to protect bigleaf mahogany since 1992, when NRDC prepared a comprehensive scientific analysis of the impact of trade on the species and recommended its listing on Appendix II of the Convention on International Trade in Endangered Species ("CITES"). (Id. ¶ 5.)

11. In January 2001, NRDC placed the Tahuamanu rainforest in the Madre de Dios region of the Peruvian Amazon on its "BioGems" list of threatened ecosystems, due to the effects of illegal mahogany logging. (Id.)

12. In November 15, 2002, the Conference of the Parties of CITES voted to include bigleaf mahogany on Appendix II of the Convention. The listing went into effect in November 15, 2003. (Id.)

13. CITES requires that designated authorities in exporting countries, prior to issuing any valid export permit for an Appendix II-listed species, make specific findings that (a) trade in the species is not detrimental to its survival, and (b) that the specimens for which export is sought were lawfully acquired under the laws of that country. (Id. ¶ 6, Exs. A-C.)

14. NRDC and other organizations have alerted United States Government authorities to CITES violations in relation to exports of bigleaf mahogany from Peru and urged these authorities to ensure proper implementation of bigleaf mahogany's Appendix II listing. (Id. ¶ 6, Exs. A-B.)

15. On March 10, 2006, NRDC, on behalf of itself and two Peruvian indigenous organizations, sent separate letters to a group of United States Government agencies and a group of private timber importers, notifying them of the non-profit groups' intent to sue them under the federal Endangered Species Act ("ESA") for violations of CITES as incorporated into the ESA by 16 U.S.C. § 1538(c). (Id. ¶ 7; Exs. B, C.)

16. On July 11, 2006, NRDC sent a request to the United States Department of State ("DOS") for the disclosure of records pursuant to the Freedom of Information Act, 5

3

U.S.C. § 552 *et seq.* ("FOIA"), and the applicable DOS regulations, 22 C.F.R. pt. 171. (Id. ¶ 8, Ex. D.)

17. NRDC requested three categories of records relating to the logging and/or trade of Peruvian bigleaf mahogany. (Id.)

18. NRDC indicated in the request that the first-listed category of records was its highest priority: "[a]ny cable, communication or other record sent on or around April 19, 2006 from the United States Embassy in Peru" relating to the logging and/or trade of Peruvian bigleaf mahogany. (Id.)

19. In a letter dated July 26, 2006, the DOS stated that it would "begin processing the request," but denied NRDC the statutory waiver of the fees associated with responding to the FOIA request, which NRDC had requested pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). (Id. ¶ 9, Ex. E.)

20. NRDC timely appealed the fee waiver denial on August 9, 2006, providing a detailed explanation of how its original request met the criteria set forth in 5 U.S.C. § 522(a)(4)(A)(iii) and DOS's implementing regulations at 22 C.F.R. § 171.17(1). The Appeal cited articles in major national newspapers concerning illegal mahogany traffic from Peru and Brazil, statements from various federal officials on the importance to U.S. policy of stopping the illegal mahogany trade, and included, as attachments, fourteen documents demonstrating NRDC's track record over twenty years of disseminating information to the public that it had obtained from FOIA requests. (Id. ¶ 10, Ex. F.)

21. DOS denied NRDC's fee waiver appeal in a letter dated November 6, 2006. (Id. ¶ 11, Ex. G.)

22. After over nine months passed without DOS disclosing any records in response to NRDC's July 11, 2006 FOIA request, NRDC submitted a second FOIA request on April 24, 2007, again seeking disclosure of records relating to the logging and/or trade of Peruvian bigleaf mahogany. The April 24, 2007 FOIA request reiterated that NRDC was particularly interested in a document sent on or around April 19, 2006 from the United States Embassy in Peru. (Id. ¶ 12, Ex. H.)

23. While awaiting responsive documents, NRDC and other organizations continued to advocate for the implementation of the Appendix II listing of mahogany in various fora, including in the governing bodies of CITES and in the context of trade negotiations between the United States and Peru. (Id. ¶ 13, Exs. I-J.)

24. The trade in mahogany and other timber species was a central issue in negotiations at the Conference of the Parties of CITES ("CITES COP") in the Hague, Netherlands, in June 2007 and was featured in the international media coverage of those negotiations. (Id. ¶ 13, Ex. I.)

25. The illegal logging and trade of bigleaf mahogany also became a major issue in ongoing trade negotiations between the United States and Peru and featured prominently in the public debate and media reports about these negotiations. (Id. ¶ 14, Ex. M.)

26. The final U.S.-Peru Trade Promotion Agreement, which was signed by President Bush on December 14, 2007, includes a Forest Governance Annex specifying steps to be taken by both governments to address the trade in illegally logged timber. (Id. ¶ 14.)

27. NRDC had intended to use documents responsive to its two FOIA requests to inform its participation in discussions with CITES Parties and the public leading up to the June 2007 CITES COP, and in discussions with congressional members, staff and the public

on the U.S.-Peru trade agreement. The documents continue to be valuable to inform the policy discussions concerning implementation of the Forest Governance Annex to the U.S.-Peru trade agreement. (Id. ¶¶ 15, 19, Ex. M.)

28. DOS only began releasing responsive documents after the filing of this lawsuit on July 21, 2007. An August 20, 2007 letter from DOS's counsel informed NRDC that DOS would finally begin to provide documents in response to NRDC's FOIA requests. (Id. ¶ 16, Ex. K.)

29. The August 20, 2007 letter from DOS counsel also stated that DOS had decided to reverse its earlier denial of NRDC's fee waiver request, granting NRDC a statutory waiver of fees associated with responding to the two FOIA requests. (Id. ¶ 16, Ex. K.)

30. DOS has now provided NRDC, either directly or through referrals to other agencies, with approximately 85 records responsive to NRDC's two FOIA requests, while informing NRDC that it was withholding approximately 86 records in full or in part. (Id. ¶ 17, Ex. L.)

31. DOS initially resisted providing NRDC with a Vaughn index detailing its justifications for its witholdings and redactions of certain documents responsive to NRDC's two FOIA requests. (Id. ¶ 17.)

32. Following a conference with the Court on November 9, 2007 and in response to the Court's order, DOS produced two Vaughn indices, one for each of NRDC's FOIA requests, of witholdings and redactions of documents responsive to these requests. (Id. ¶ 17, Ex. L.)

33. NRDC received these Vaughn indices on January 28, 2007 under a cover letter that was dated January 25, 2007. (Id.)

34. The DOS Vaughn index indicates that DOS has principally withheld documents from NRDC under FOIA Exemption 5. (Id. ¶ 18.)

35. DOS produced an April 6, 2006 cable from the U.S. Embassy in Peru in redacted form on October 29, 2007. (Id. ¶ 18, Ex. M.)

36. DOS's Vaughn index for NRDC's 2006 FOIA request justifies all of the redactions from the April 6, 2006 cable (marked as document "E8") under FOIA Exemption 5, stating that the "[d]ocument contains opinions and reveals deliberations by decision-makers." (Id. Ex. L at 8.)

37. DOS's Vaughn index does not assert that any of the material redacted from the April 6, 2006 cable is "predecisional," even though it identifies other Exemption 5 redactions and withholdings as both "deliberative" and "predecisional." (Id. Ex. L at 8.)

38. The material that has been released from the April 6, 2006 cable reveals this document to be a valuable source of information, providing evidence that the United States knew that Peru's export permits for bigleaf mahogany were not valid under CITES. (Id. ¶ 19.)

39. The April 6, 2006 cable states, for example, that "[m]uch *[sic]* of the exports [of Peruvian broadleaf mahogany] are likely from illegal logging, violating Peruvian law and the CITES international convention against trafficking in endangered species." (Id. Ex. M ¶ 1.)

40. The April 6, 2006 cable notes that "[u]nofficial [Peruvian government] estimates indicate that 70-90 percent of all mahogany exported in 2005 originated from illegal sources." (Id. Ex. M ¶ 1.)

7

41. The April 6, 2006 cable refers to NRDC's March 10, 2006 notice of intent to sue, noting that Peru's export association had expressed concern about what it termed "misrepresentations of fact" in that notice letter.  (Id. Ex. M ¶ 16.)

42. The April 6, 2006 cable confirms many of the facts in NRDC's March 10, 2006 notice letter, as well as the notice letter's general conclusion that much, if not all, of the mahogany from Peru was being exported in violation of CITES.  It also highlights the potential for addressing the illegal timber trade in the context of the U.S.-Peru trade negotiations.  (Id. ¶ 19, Ex. M.)

Dated: February 8, 2008
　　　　Washington, DC　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　 s/
　　　　　　　　　　　　　　　　　　　　　Thomas Cmar (TC 8791)
　　　　　　　　　　　　　　　　　　　　　NATURAL RESOURCES DEFENSE COUNCIL
　　　　　　　　　　　　　　　　　　　　　1200 New York Ave., N.W., Ste. 400
　　　　　　　　　　　　　　　　　　　　　Washington, DC  20005
　　　　　　　　　　　　　　　　　　　　　Phone:  (202) 289-2405
　　　　　　　　　　　　　　　　　　　　　Fax:  (202) 289-1060

　　　　　　　　　　　　　　　　　　　　　Mitchell S. Bernard (MB 5823)
　　　　　　　　　　　　　　　　　　　　　NATURAL RESOURCES DEFENSE COUNCIL
　　　　　　　　　　　　　　　　　　　　　40 West 20th Street
　　　　　　　　　　　　　　　　　　　　　New York, NY  10011
　　　　　　　　　　　　　　　　　　　　　Phone:  (212) 727-2700
　　　　　　　　　　　　　　　　　　　　　Fax:  (212) 727-1773

　　　　　　　　　　　　　　　　　　　　　Counsel for Plaintiff